UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------

JAMES P. McGEE,                                    09 Civ. 6098 (FPS)

        Plaintiff,

v.                                          **MEMORANDUM OPINION AND ORDER**
                                              **LIFTING THE STAY AND**
JAMES DUNN, J. DUNN CONSTRUCTION CORP.,     **GRANTING DEFENDANT JAMES**
ECTOR PEREZ GALINDO, TOWN OF CARMEL,        **DUNN'S MOTION TO DISMISS**
TOWN OF CARMEL POLICE DEPARTMENT,
TOWN OF CARMEL POLICE OFFICERS,
CHRISTOPHER FOX,
JOHN DOE (Fox's supervisor
on the day of the arrest),
DET. ROBERT BAGNAROL,
LT. BRIAN KARST,
SGT. JOHN (JACK) HARNEY,
LT. MICHAEL CASSARI,
CHIEF MICHAEL R. JOHNSON,
PUTNAM COUNTY DISTRICT ATTORNEY'S OFFICE,
KEVIN WRIGHT, ESQ., then-Putnam County
District Attorney and
ROBERT A. NOAH, ESQ., Putnam County
Assistant District Attorney,

        Defendants.

-------------------------------------------

## I.   Procedural History

This action arises out of a longstanding dispute between the plaintiff, James P. McGee, and one of the fifteen named defendants, James Dunn ("Dunn").  As noted in a previous order, the plaintiff's complaint, filed in the United States District Court for the Southern District of New York, asserts claims against the following defendants: Ector Perez Galindo ("Galindo"); the Putnam County District Attorney's Office, Kevin Wright, and Robert Noah (collectively the "PCDA defendants"); the Town of Carmel, the

Carmel Police Department, and the Carmel Police Officers Christopher Fox, John Doe, Detective Robert Bagnarol, Lieutenant Brian Karst, Sergeant John Harney ("Harney"), Lieutenant Michael Cazzari, and Chief Michael R. Johnson (collectively "the Town of Carmel defendants"); and James Dunn and J. Dunn Construction Corp. ("JDCC") (collectively, the "Dunn defendants").   The plaintiff alleges in his complaint that the defendants conspired to bring about his arrest and prosecution based on false and misleading evidence and to engage in a malicious abuse of process.   The plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging due process violations that resulted from the defendants' conspiracy.   According to the plaintiff, he is entitled to compensatory damages, punitive damages, and attorney's fees for the mental and emotional pain and suffering he has experienced as a result of the defendants' alleged conspiracy.

The defendants filed four separate motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   After the parties briefed these motions, this Court entered a memorandum opinion and order, wherein it granted defendants' motions to dismiss as to all but one defendant, defendant Dunn.[1]   As to defendant Dunn, this Court stayed the action due to his Chapter 7 bankruptcy petition, and directed that defendant Dunn inform this

---

[1]After this Court granted those defendants' motions to dismiss, the plaintiff filed a motion for reargument, relief from judgment or, in the alternative, to amend the complaint, which this Court denied.   See ECF No. 80.

Court if the automatic stay was lifted by the United States Bankruptcy Court. On April 16, 2013, defendant Dunn, through counsel, notified this Court that the United States Bankruptcy Court terminated the automatic stay with respect to defendant Dunn. Accordingly, the stay placed on this action concerning defendant Dunn is terminated and this Court will now proceed to make a determination as to defendant Dunn's motion to dismiss.

In support of defendant Dunn's motion,[2] he argues that this action should be dismissed based on res judicata and collateral estoppel because the plaintiff's allegations in this case are identical to the allegations that were raised and dismissed in the state court action. Further, defendant Dunn contends that the plaintiff's allegations against Dunn should be dismissed as legally insufficient. The plaintiff responded to the Dunn defendants' motion to dismiss by arguing first that, because the state court dismissal was not a decision on the merits, res judicata does not apply. Further, even if it does apply, the complaint states a § 1983 claim against defendant Dunn as it properly alleges that Dunn acted under color of state law, and it adequately alleges all of the elements of the claimed violations under § 1983. Defendant

---

[2]The Dunn defendants, James Dunn and J. Dunn Construction Corp., filed a combined motion to dismiss. This Court granted the motion to dismiss as to J. Dunn Construction Corp. in a previous decision and order, and will therefore, only refer to the arguments on behalf of James Dunn.

Dunn did not file a reply to the plaintiff's response in opposition.

For the reasons stated below, this Court finds that the motion to dismiss as to defendant Dunn must be granted.

## II.   Facts[3]

The plaintiff and his wife hired James Dunn to perform work on their house pursuant to three home improvement contracts.  On or about May 19, 2005, Dunn collected his tools and walked off the job after a dispute arose between him and the plaintiff regarding the placement of electrical wiring and other issues related to the construction.  Several days later, Dunn informed the plaintiff that he would not return until the plaintiff paid him the remaining balances on the three contracts in cash, plus $800.00 for the additional work that he had allegedly performed.  On May 30, 2005, Dunn increased his demand from $800.00 to $5,000.00.  The plaintiff was unable to persuade Dunn to return to complete the work.

On or about July 18, 2005, the McGees suffered extensive water damage to their home during a storm.  After filing a claim with their insurance carrier, Liberty Mutual, the senior insurance inspector determined that the water damage was due to the faulty installation of the roof by Dunn in May 2005.  Liberty Mutual paid the McGees for the ceiling damage and then attempted to pursue a

_____

[3]For purposes of deciding this motion to dismiss as to defendant Dunn, this Court states the facts as set forth in the complaint.

subrogation action against Dunn for reimbursement.  Liberty Mutual was unable to contact Dunn for approximately fourteen months.

The plaintiff then brought a small claims action against Dunn in the Town of Carmel Justice Court regarding one of the three contracts entered into between them.  Subsequently, Dunn filed a counterclaim against McGee, and McGee then brought a second small claims action in that court regarding the second contract.  McGee also brought a consumer complaint before the Dutchess County Department of Consumer Affairs ("DCDCA") regarding one of the three contracts that he had entered into with Dunn, but the DCDCA determined that the matter was beyond its scope.

Because the amount of damages related to his two small claims actions in the Town of Carmel Justice Court exceeded the subject matter jurisdiction of that court, McGee withdrew his two small claims actions in order to commence an action in the New York State Supreme Court.  However, the trial of Dunn's counterclaim proceeded in small claims court.  Prior to this trial, McGee's lawyer, Mark Starkman, withdrew from representing him, allegedly because Dunn had induced Starkman to believe false accusations about McGee's honesty.  Dunn's counterclaim was tried in the Town of Carmel Justice Court, with McGee proceeding pro se.[4]  By decision and

_____

[4]"Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer.  Black's Law Dictionary 1341 (9th ed. 2009).

order dated November 29, 2005, Judge James Reitz found in McGee's favor and dismissed Dunn's counterclaim in its entirety.

On December 20, 2006, McGee brought a civil action against Dunn in the New York State Supreme Court relating to all three contracts.  This action was ultimately concluded by way of a settlement agreement pursuant to which Dunn agreed to a judgment against his construction contracting firm, JDCC.

Over the course of the litigation described above, Dunn often discussed his ongoing private dispute with the McGees at Fiddler's Bar, a local establishment frequented by members of the Carmel Police Department and the Putnam County District Attorney's Office. According to the complaint, almost all of the defendants in this case had some connection to Fiddler's Bar, either as a patron, employee, or contractor.  The complaint further states that Dunn, with the aid of his attorney Philip Marin, Esq. ("Marin"), induced Galindo to swear out the criminal complaint against McGee that brought about the false arrest and malicious prosecution at issue in this case.[5]

Beginning in August 2005, Dunn unsuccessfully attempted to convince various agencies to initiate criminal investigations and proceedings against McGee. Dunn made various claims against McGee, including: that McGee had illegal structures on his property; that

---

[5]Galindo worked as a cook at Fiddler's Bar, and was also allegedly employed by Dunn as a day laborer doing home improvement work.

McGee had forged estimates from other contractors for completing the work that Dunn had abandoned; that McGee had committed insurance fraud; and that McGee had asked Dunn to perform illegal construction.  When McGee's attorney, Mark Starkman, withdrew from representing him in December 2005, Dunn allegedly spread falsehoods to various agencies regarding the McGees' dishonesty.  In November and December 2006, Dunn allegedly attempted to persuade the Dutchess County Supervisor's Office, the Dutchess County Attorney's Office, and the Dutchess County District Attorney's Office to bring criminal charges against McGee for insurance fraud and forgery, but to no avail.

In 2006, Liberty Mutual commenced an inter-insurance company arbitration proceeding against Dunn and his insurance carrier, Utica First.  The Inter-Insurance Company Arbitration Board ruled in the McGees' favor, finding Dunn liable for the water damage to the McGees' home.  As a result of this decision, Utica First reimbursed Liberty Mutual for the insurance payment it had made to the McGees.  Dunn filed a complaint about this decision with the New York State Department of Insurance, accusing Liberty Mutual and the McGees of insurance fraud, but the New York State Department of Insurance rejected Dunn's complaint.

On March 21, 2007, Dunn brought Galindo to the office of his attorney, Marin, to sign a civil affidavit.  At this meeting, Dunn and Marin allegedly told Galindo that a phone call made by McGee to

Galindo constituted the crime of witness tampering and that Galindo should report this phone call to the police.  Dunn allegedly suggested that Galindo go to the Carmel Police Station and swear out a criminal complaint, and Galindo agreed to do so.  On March 27, 2007, Dunn escorted Galindo to the Carmel Police Station to file the complaint against McGee.  Defendants Officer Fox and Sergeant Harney were present when Galindo swore out the complaint.[6] The complaint consisted of the following statement:  "McGee calls me around 11 p.m.  I think he try to scare me if I go to court to testifying.  Because he ask me if I was citizen or legal in USA." Compl. ¶ 37.

The March 27, 2007 complaint by Galindo formed the sole basis for McGee's arrest on the charge of witness tampering, despite the fact that it failed to allege when the supposed tampering occurred and whether there was an ongoing proceeding in which Galindo was to be called as a witness.  Moreover, the complaint was supposedly accepted by the police without any of the required personal information of the complainant.  On the same day that Galindo filed the complaint, Officer Fox left messages on McGee's business answering machine directing him to come down to the police station for processing, or else a warrant would be issued for his arrest.

On March 29, 2007, McGee's attorney, Darren Fairlie, Esq. ("Fairlie"), called Officer Fox and Assistant District Attorney

---

[6] An interpreter was not present.

Noah ("Noah") in order to provide some background of the dispute between Dunn and McGee and explain the connection between Galindo and Dunn.  Fairlie requested that Assistant District Attorney Noah investigate the matter before arresting McGee.  Noah, however, insisted that McGee present himself for arrest the following day, as the police had instructed him to do.  Thus, on March 30, 2007, McGee voluntarily reported to the police station with his counsel, Fairlie.  Upon entering the station, the police allegedly separated McGee and Fairlie and placed McGee in a cell.  When McGee requested that Officer Fox notify Fairlie that he had been arrested and placed in a cell, Officer Fox supposedly threatened to make McGee sit in the cell all day, take him before a judge, and make him raise bail before releasing him.  Officer Fox then allegedly attempted to coerce McGee into signing a waiver of his <u>Miranda</u> rights, including his right to counsel.  McGee did not sign the waiver.  Officer Fox then attempted to question McGee without his attorney present, all while Fairlie was seated down the hall.

Following the arrest, Fairlie wrote to Chief Michael Johnson and Kevin Wright, Esq., among others, complaining of the arrest. Immediately thereafter, acting at the direction of Noah, Wright and/or Johnson, Officer Fox allegedly attempted to rectify the defects in the original accusatory instrument by filling in the details himself.  However, the arrest report still failed to provide specifics regarding the alleged "ongoing civil case."

On or about April 4, 2007, Detective Bagnarol allegedly called Galindo and requested that he return to the precinct to complete a second "voluntary statement."  This second statement was accomplished by a question and answer session between Bagnarol and Galindo, with no interpreter present.  Defendant Harney, a friend of Dunn's, signed the second voluntary statement as a witness.

In response to Fairlie's March 30, 2007 letter, Lieutenant Karst called Fairlie and attempted to persuade him that he had conducted an in-house investigation regarding the arrest and processing of McGee and had concluded that nothing was improper. Lieutenant Karst would not provide a copy of the investigation report to Fairlie.  According to the plaintiff, the Carmel Police Department attempted to cover up the manner in which Galindo -- at Dunn's direction -- swore out the criminal complaint and has attempted to conceal evidence regarding the manner in which McGee was arrested.

Assistant District Attorney Noah continued the prosecution of McGee for ten months.  Noah allegedly never interviewed Galindo, never verified Galindo's allegations that McGee called him in November 2006, and never confirmed if there were court proceedings ongoing between Dunn and the McGees when the phone call to Galindo was allegedly made.  Noah did, however, have multiple conversations and meetings with Dunn in order to obtain information to use in the prosecution of McGee.

10

McGee hired an attorney to defend him against the criminal charge of witness tampering.  On January 14, 2008, Judge Joseph J. Spofford, Jr. issued a decision and order dismissing the accusatory instrument as insufficient and finding "no credible evidence that at the time of the alleged phone conversation that there was any pending action or proceeding."  McGee contends that the defendants conspired, acted in concert, and aided and abetted each other, under color of state law, to do whatever was necessary to cause his false arrest, malicious prosecution, and malicious abuse of process.  Compl. ¶ 85.

### III.  Applicable Law

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept all well-pled facts contained in the complaint as true.  Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 123 (2d Cir. 2010).  However, to survive a motion to dismiss, the complaint must offer more than "labels and conclusions or a formulaic recitation of the elements of a cause of action" and must tender more than "naked assertions devoid of further factual enhancement." Arar v. Ashcroft, 585 F.3d 559, 594 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)) (internal citations omitted).

It has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest

11

about the facts or the merits of the case.  5B Charles Alan Wright
& Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356 (3d ed.
1998).  The Rule 12(b)(6) motion also must be distinguished from a
motion for summary judgment under Federal Rule of Civil Procedure
56, which goes to the merits of the claim and is designed to test
whether there is a genuine issue of material fact.  <u>Id.</u>  For
purposes of the motion to dismiss, the complaint is construed in
the light most favorable to the party making the claim and
essentially the court's inquiry is directed to whether the
allegations constitute a statement of a claim under Federal Rule of
Civil Procedure 8(a).  <u>Id.</u> § 1357.

A complaint should be dismissed if it does not allege "enough
facts to state a claim to relief that is plausible on its face."
<u>Hollander v. Copacabana Nightclub</u>, 624 F.3d 30, 32 (2d Cir. 2010)
(quoting <u>Iqbal</u>, 129 S. Ct. at 1949).  "A claim is plausible 'when
the plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged.'"  <u>Matson v. Bd. of Educ. of City Sch. Dist. of
N.Y.</u>, 631 F.3d 57, 63 (quoting <u>Iqbal</u>, 129 S. Ct. at 1949).
Detailed factual allegations are not required, but the facts
alleged must be sufficient "to raise a right to relief above the
speculative level."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555
(2007).

IV.   <u>Discussion</u>

A.   <u>Res Judicata</u>

Defendant Dunn first argues that he believes this Court should grant his motion to dismiss based on the principles of res judicata and collateral estoppel, because a New York state court dismissed a similar action by the plaintiff against defendant Dunn. Defendant Dunn asserts that under New York law, the transactional approach is used when applying the principles of res judicata. Therefore, he states that the plaintiff cannot circumvent the application of res judicata by renaming his cause of action against the defendant, because all claims arising out of the same transaction or series of transactions are barred once a claim is brought to a final conclusion.  Defendant Dunn then cites portions of the plaintiff's state court complaint and portions from the complaint in this action that he believes prove that the current claims arise out of the same transaction or series of transactions as the plaintiff's state court claims.

The plaintiff responds in opposition to defendant Dunn's res judicata argument by stating that, while the transactional approach does apply under New York law, the dismissal in this case was not on the merits.  Therefore, the plaintiff argues that because the dismissal was not on the merits, it has no preclusive effect.  The plaintiff also indicates that unlike the state court complaint, the complaint in this action alleges more than a malicious prosecution

13

claim and moreover, it also corrects any possible defects of the state court complaint.

"[A] federal court must give to a state-court judgment, the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). This applies "regardless of whether the action alleged state or federal claims, and includ[es] actions brought pursuant to 42 U.S.C. § 1983." Legal Aid Society v. City of New York, No. 96 CIV. 5141, 1997 WL 394609, at *2 (S.D.N.Y. July 11, 1997). Therefore, this Court must apply New York principles of res judicata. New York courts use a transactional approach when determining whether to give past judgments preclusive effect over newly filed actions. Romano v. Astoria Federal Sav. & Loan Ass'n, 490 N.Y.S.2d 244, 245 (N.Y. App. Div. 1985); Antonious v. Muhammad, 873 F. Supp. 817, 821 (S.D.N.Y. 1995) (citations omitted). Under this approach, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." O'Brien v. City of Syracuse, 429 N.E.2d 1158, 1159 (N.Y. 1981); see Antonious, 873 F. Supp at 821 (quoting O'Brien, 429 N.E.2d at 1159).

Under New York law, the dismissal or final conclusion of the original action must have been on the merits. Antonious, 873 F.3d

at 822.   It is the burden of the party who is asserting res judicata to prove that the judgment was on the merits.   Watts v. Swiss Bank Corp., 27 N.Y.2d 270, 275 (N.Y. 1970).   When a dismissal is the result of a motion "attacking the sufficiency of the complaint as stating a cause of action[,]" such dismissal only has preclusive effect "as to a new complaint for the same cause of action which fails to correct the defect or supply the omission determined to exist in the earlier complaint."   175 E. 174th Corp. v. Hartford Acc. & Indem. Co., 416 N.E.2d 584, 590 n.1 (N.Y. 1980).

This Court finds that defendant Dunn, the party asserting that res judicata applies, has not met his burden of proving that the state court dismissal was on the merits.   Defendant Dunn merely states in his response that the judgment was "on the merits."   See ECF No. 35 *3.   The defendant does not indicate on what bases the case was dismissed or even what motion resulted in the dismissal of the action.   It appears that defendant Dunn intended to attach a copy of this judgment, but this Court has not received any such exhibit.   Id.   Even if such exhibit was attached to his motion, however, this Court is still left with no argument from defendant Dunn as to why he believes the dismissal was on the merits.   The plaintiff specifically argued in his response to defendant Dunn's motion to dismiss that the dismissal was not on the merits and provided quotations from the dismissal order and case law in support of his argument, yet defendant Dunn did not file a reply to

15

oppose these assertions.   Therefore, based on defendant Dunn's
failure to meet his burden of proving that the state court
dismissal was on the merits, this Court cannot grant defendant
Dunn's motion to dismiss on res judicata grounds.

B.   <u>Legal Sufficiency</u>

Defendant Dunn's second argument in support of his motion to
dismiss is that the plaintiff's allegations against him are legally
insufficient, and therefore the complaint should be dismissed in
its entirety.   Specifically, defendant Dunn argues that because he
did not bring any criminal proceeding against the plaintiff, the
plaintiff's malicious prosecution claim must fail.   Defendant Dunn
also states that the record is devoid of any evidence to support
plaintiff's conspiracy theory, without providing any further
explanation.   Defendant Dunn does not address plaintiff's abuse of
process allegation.

The plaintiff, in opposition to defendant Dunn's arguments,
asserts that first, defendant Dunn acted under color of state law,
as is required if he is to be found liable under § 1983.   The
plaintiff states that the complaint adequately alleges that
defendant Dunn acted under color of state law, as it alleges that
defendant Dunn acted in "cahoots" with his friends at the Town of
Carmel Police Department.   <u>See</u> ECF No. 36 *11.   Second, the
plaintiff argues that the complaint adequately alleges all of the
elements of the claimed violations under § 1983.

16

1.   <u>Section 1983 Malicious Prosecution and Abuse of Process</u>
<u>Claims</u>

Two essential elements are required to maintain a § 1983
action: "(1) the conduct complained of must have been committed by
a person acting under color of state law; and (2) the conduct
complained of must have deprived a person of rights, privileges, or
immunities secured by the Constitution or laws of the United
States." <u>Pitchell v. Callan</u>, 13 F.3d 545, 547 (2d Cir. 1994)
(citations omitted).   According to the United States Court of
Appeals for the Second Circuit, "[a] private person -- not a
government official -- acts under color of state law for purposes
of § 1983 when 'he has acted together with or has obtained
significant aid from state officials' or because his conduct is
otherwise chargeable to the state." <u>Barrett v. Harwood</u>, 189 F.3d
297, 304 (2d Cir. 1999) (quoting <u>Lugar v. Edmondson Oil Co.</u>, 457
U.S. 922, 937 (1982)).   The Second Circuit has held that a private
party's conduct constitutes state action when:

> [T]here is such a close nexus between the State and the
> challenged action that seemingly private behavior may be
> fairly treated as that of the State itself.   That nexus
> may exist where a private actor has operated as a wilful
> participant in joint activity with the State or its
> agents, or acts together with state officials or with
> significant state aid.

<u>Abdullahi v. Pfizer, Inc.</u>, 562 F.3d 163, 188 (2d Cir. 2009)
(internal quotations omitted); <u>see also</u> <u>Ginsberg v. Healey Car &</u>
<u>Truck Leasing, Inc.</u>, 189 F.3d 268, 272 (2d Cir. 1999) (stating that

for a private person to be a state actor, there must be evidence of a plan, prearrangement, conspiracy, custom, or policy). "However, complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." Richardson v. New York City Health and Hospitals Corp., No. 05-CV-6278, 2009 WL 804096, at *17 (S.D. N.Y. Mar. 25, 2009) (internal quotations omitted).

Although defendant Dunn did not make specific arguments concerning whether or not he was acting under color of state law in his motion to dismiss, the plaintiff did make such arguments. Therefore, this Court will address whether or not, based on the complaint, defendant Dunn may be considered to have acted under color of state law for § 1983 purposes.  In support of the plaintiff's position, he states that the complaint alleges personal connections between defendant Dunn and the PCDA defendants and Town of Carmel defendants and the complaint also alleges that defendant Dunn entered into a conspiracy with these state actor defendants. This allegation, however, is merely a conclusory allegation, which does not provide enough facts for this Court to find that the required close nexus between defendant Dunn and the state actors existed. See Fisk v. Letterman, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005) ("Alleging merely that a private party regularly interacts

18

with a state actor does not create an inference of agreement to violate a plaintiff's rights.").

While the plaintiff does assert that other allegations contained in the complaint show a connection between the defendants, only one of these allegations concerns any interaction between defendant Dunn and a state actor. This is the allegation that defendant Dunn spoke with and provided information concerning the plaintiff to defendant Noah, an Assistant District Attorney, in connection with defendant Noah's prosecution of the plaintiff. Compl. ¶ 72-73. However, this allegation alone is not sufficient for this Court to find that a plausible claim under § 1983 for malicious prosecution or abuse of process exists against defendant Dunn, as it does not allege the required close nexus between defendant Dunn and a state actor.[7]

2. <u>Section 1983 Conspiracy Claim</u>

To state a claim for conspiracy under § 1983, the complaint "must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing

---

[7]This Court notes that, even if it did find that defendant Dunn acted under color of state law, this Court would nonetheless dismiss plaintiff's claim for malicious prosecution against defendant Dunn for the reasons set forth in its opinion and order granting the other defendants' motions to dismiss. In that opinion and order, this Court found that because the prosecution against the plaintiff was not dismissed on the merits, the plaintiff could not maintain an action for malicious prosecution against the defendants. ECF No. 50 *20.

damages." <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 324-35 (2d Cir. 2002) (citing <u>Pangburn v. Culbertson</u>, 200 F.3d 65, 72 (2d Cir. 1999). The analysis of this issue is similar to determining whether the complaint alleged sufficient facts for this Court to find that defendant Dunn acted under the color of state law. <u>See id.</u> at 324 (finding the analysis of a § 1983 conspiracy claim similar to analysis of whether a party acted under color of state law). As such, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." <u>Dwares v. City of N.Y.</u>, 985 F.2d 94, 100 (2d Cir. 1993).

This Court again finds that the plaintiff's factual allegations are insufficient. Specifically, the plaintiff has not alleged sufficient factual allegations to support an inference that defendant Dunn agreed with a state actor to inflict an unconstitutional injury upon the plaintiff. The mere fact that defendant Dunn discussed his private dispute with the plaintiff at Fiddler's Bar does not prove conspiracy. Even assuming, as the plaintiff suggests, that defendant Noah spoke directly to Dunn on several occasions, and that Noah solicited information from Dunn,

these allegations do not add up to an agreement to inflict an unconstitutional injury upon the plaintiff.

V.  <u>Conclusion</u>

For the reasons stated above, the defendant James Dunn's motion to dismiss (ECF No. 35) is GRANTED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.  The Clerk is further DIRECTED pursuant to Federal Rule of Civil Procedure 58, to enter judgment on this Court's previous decision and order granting certain defendants' motions to dismiss (ECF No. 50).

DATED:    April 29, 2013

<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE